

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

*FILED*
*WILLIAMSPORT*
*AUG 09 2022*
*PER* _____
*DEPUTY CLERK*

| | |
|---|---|
| WILLIAM J. CHAFFIN, JR. § | |
| Petitioner, § | |
| § | |
| v. § | Civil No. ___:22-cv-_____ |
| § | Crim No. 2:15-cr-00256-CB-1 |
| WARDEN, FCI Allenwood Medium, § | |
| Respondent. § | |

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COMES Petitioner, WILLIAM J. CHAFFIN, JR. ("Chaffin"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. STATEMENT OF JURISDICTION

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 2241, which confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. A federal prisoner may also challenge the legality of his detention under § 2241 if he falls within the "savings clause" of § 2255(e). See *In re Dorsainvil*, 119 F.3d 245, 249-51 (3rd Cir. 1997).

## II. <u>STATEMENT OF THE GROUND FOR REVIEW</u>

Whether, in light of *Descamps v. United States*,133 S.Ct. 2276 (2013) and

*Mathis v. United States*, Chaffin's prior convictions do not qualify him as a career

offender requiring resentencing without the career offender enhancement.

## III. <u>STATEMENT OF THE CASE</u>

### A.     <u>Procedural Background</u>

On December 2, 2015, a federal grand jury sitting in the Western District of

Pennsylvania returned a seven (7) count federal Indictment charging Chaffin with

sixteen other co-defendants. See Doc. 21.[1] Count 1 charged Chaffin with Conspiracy

to Distribute 5 Kilograms Or More of Cocaine, in violation of 21 U.S.C. §§ 846,

841(a)(1) and (b)(1)(A)(iii). *Id.* Counts 2, 3, and 4 charged Chaffin with Distribution

and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(C). *Id.* Count 5 charged Chaffin with Possession of A Firearm And/Or

Ammunition by A Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). *Id.* The

Indictment also contained a Forfeiture Allegation, pursuant to 18 U.S.C. § 924(d), 28

U.S.C. § 2461(c), and 21 U.S.C. § 853(p). *Id.*

---

[1]     "Doc." refers to the Docket Report in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division in Criminal No. 2:15-cr-00256-CB-1, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On February 3, 2017, Chaffin plead guilty to Counts 1 - 4 of the Indictment and accepted responsibility for Count 5. See Doc. 695. A provision of the plea agreement called for an 11(c)(1)(C) plea of 15 years (180 months). *Id.*

On September 1, 2017, Chaffin was sentenced to a term of 15 years imprisonment, 5 years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $400. See Doc. 888.

On June 26, 2020, Chaffin filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). See Doc. 1071.

On July 22, 2020, the Court issued an Order denying his Motion to Reduce Sentence. See Doc. 1083.

### B.   Statement of the Facts

#### 1.   Offense Conduct

The charges against Chaffin in this case were the result of a Title III wiretap investigation conducted by the Federal Bureau of Investigation ("FBI"). In addition to the wiretaps, during the investigation, the government obtained surveillance evidence. Moreover, when agents executed a federal search warrant at Chaffin's residence, he was standing at the stove in his kitchen cooking cocaine into crack. The government's evidence against him, therefore, was strong. Allegedly Chaffin admitted to his involvement in this cocaine trafficking conspiracy, through which the defendant and his

3

co-conspirators allegedly flooded the streets of Uniontown, PA, and other areas within the Western District of Pennsylvania ("WDPA") with substantial quantities of cocaine. Chaffin allegedly acknowledged his personal responsibility for the distribution of more than five ( 5) kilograms but less than fifteen (15) kilograms of cocaine onto the streets of the WDPA. See Doc. 825.

### 2.   Plea Proceeding

On February 3, 2017, a Change of Plea Hearing was held and Chaffin plead guilty to Counts 1 - 4 of the Indictment and accepted responsibility for Count 5. See Doc. 695. A provision of the Plea Agreement called for an 11(c)(1)(C) plea of 15 years (180 months). *Id.* Count 5 was withdrawn pursuant to the Plea Agreement, Chaffin acknowledges responsibility for the conduct. The case was referred to the Probation Office for the preparation of the Presentence Report ("PSR").

### 3.   Presentence Report Calculations and Recommendations

On April 6, 2017, the Probation Office prepared Chaffin's PSR, which was revised on May 5, 2017. The 2016 Guidelines Manual, incorporating all guideline amendments, was used to determine Chaffin's offense level, pursuant to USSG § 1B1.11. See PSR ¶ 35. Counts 1, 2, 3 and 4 were grouped for guideline calculation purposes, pursuant to USSG § 3D1.2(d). See PSR ¶ 35. Count Group 1: Conspiracy to Possess with Intent to Distribute and Distribute Cocaine and Possession with Intent

to Distribute Cocaine calls for a Base Offense Level of 30 because parties stipulated that Chaffin is responsible for at least 5 kilograms to 15 kilograms of cocaine, pursuant to USSG § 2D1.1(c)(5). See PSR ¶ 37. Two (2) levels were added because Chaffin possessed 3 revolvers and a rifle, pursuant to USSG § 2D1.1(b)(1). See PSR ¶ 38. Chaffin's adjusted offense level was 32. See PSR ¶ 42. However, Chaffin was classified as a career offender within the meaning of USSG § 4B1.1(b), hence, his offense level was increased to 37. See PSR ¶ 43. Chaffin received a three (3) level reduction for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b). See PSR ¶¶ 44-45. The PSR calculated Chaffin's Total Offense Level to be level 34. See PSR ¶ 46. Chaffin's total criminal history score of 7, placed him in Criminal History Category IV. See PSR ¶ 58. However, Chaffin's career offender classification placed him automatically at Criminal History Category VI. See PSR ¶ 58. Based upon a Total Offense Level of 34 and a Criminal History Category of VI, the guideline imprisonment range was 262 to 327 months. See PSR ¶ 88.

4.   Sentencing Proceeding

On September 1, 2017, a Sentencing Hearing was held before Judge Cathy Bissoon. See Doc. 885. As stipulated and agreed upon the parties that the appropriate sentence in this case is a term of imprisonment of 5 years, pursuant to Rule 11(c)(1)(C), the Court sentenced Chaffin to a term of 15 years imprisonment, at each of Counts 1,

2, 3, and 4, to be served concurrently, with credit for time served on any federal detainer; followed by 5 years Supervised Release, at each Count 1, 2, 3, and 4, to run concurrently; and ordered payment of a Mandatory Special Assessment Fee of $400. See Doc. 888. No direct appeal was filed in this case.

## IV.   COGNIZABLE CLAIMS IN A PETITION FOR A WRIT OF HABEAS CORPUS UNDER § 2241

A federal prisoner may attack the validity of his conviction in a § 2241 petition if he can meet the requirements of § 2255(e)'s savings clause. See *United States v. Foy*, 803 F.3d 128 (3rd Cir. 2015). The prisoner bears the burden of showing that the remedy under § 2255 would be "inadequate or ineffective to test the legality of his detention." § 2255(e); *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536 (3rd Cir. 2002). A petitioner's inability to meet the procedural requirements of § 2255 is insufficient to meet this burden. See *Pack*, 218 F.3d at 452-53. Rather, a prisoner who wishes to proceed under the savings clause must establish that his claim "is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense" and that the claim "was foreclosed by circuit law at the time when the claim should have been raised." *Reyes-Requena*, 243 F.3d at 904. A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. See *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013). This Court has jurisdiction to hear

a habeas corpus petition under 28 U.S.C. § 2241 because it is the closest U. S. District Court to where Chaffin is incarcerated.

At the outset, it is well established that § 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus [under § 2241]." *Davis v. United States*, 417 U.S. 333, 343 (1974). Indeed, "the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Id* . at 344. See also, *Bruce v. Warden Lewisburg USP*, 868 F.3d 170 (3rd Cir. 2017). As such, a federal prisoner may attack the validity of his conviction in a § 2241 petition if he can meet the requirements of § 2255(e)'s savings clause. See *United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013).

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). The "savings clause" contained in § 2255(e) provides an exception to this rule when a § 2255 motion would be "inadequate or ineffective to test the legality of [the petitioner's] detention." 28 U.S.C. § 2255(e); *Cradle v. United States ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002) (per curiam). This narrow exception applies in only rare circumstances, such as when "an intervening change in statutory interpretation runs the risk that an individual was convicted of conduct that is not a crime, and that change in the law applies retroactively in cases on

7

collateral review." See *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 179 (3d Cir. 2017).

## V. DISCUSSION

As a preliminary matter, Chaffin respectfully requests that this Court be mindful that the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed and [has] held that some procedural rules must give way because of the unique circumstance of incarceration." *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239 (3rd Cir. 2012); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

### In Light of *Descamps v. United States*,133 S.Ct. 2276 (2013) and *Mathis v. United States*, 136 S.Ct. 2243 (2016), Chaffin's Prior Convictions Do Not Qualify Him as a Career Offender Requiring Resentencing Without the Career Offender Enhancement.

In this case, Chaffin asserts factual innocence of his sentence enhancement due to a change of law. As such, Section 2255 is inadequate or ineffective because of: (1) the existence of new interpretation of statutory law in *Descamps* and *Mathis*, (2) which was issued after Chaffin had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) that is retroactive, and (4) applies to the petition's merits such that it is more likely than not that no reasonable trier of fact would have enhanced his sentence. See *Wooten*, 677 F. 3d at 307–08.

8

Chaffin's sentence was driven by his sentencing enhancement under USSG § 4B1.1. This enhancement virtually increased his sentence. As such, because he is actually innocent of said enhancement, he should be resentenced to a significantly less harsh sentence.

In order for Chaffin to proceed under 28 U.S.C. § 2241, he must must show that his remedy under § 2255 is inadequate or ineffective by satisfying four conditions: (1) "the existence of a new interpretation of statutory law," (2) "issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions," (3) that is retroactive, and (4) applies to the petition's merits such that it is "more likely than not that no reasonable juror would have [enhanced his sentence]". *Hill,* 836 F.3d at 595.

Chaffin meets the above requirements as follows:

*Descamps* and *Mathis* are both new interpretations of statutory law, which were issued after Chaffin had a meaningful time to incorporate the new interpretation into his direct appeal or subsequent motions. In *Hill,* the government conceded that *Descamps* was retroactive. In *Holt v. United States,* 843 F.3d 720 (7th Cir. 2016), the Court held that substantive decisions such as *Mathis* presumptively apply retroactively on collateral review. See, e.g., *Davis v. United States* , 417 U.S. 333, 94 S.Ct. 2298 (1974); *Montgomery v. Louisiana* , 136 S.Ct. 718 (2016). The government conceded

that *Mathis* was retroactive on initial § 2255 Motions. Because the argument being made here is statutory rather than constitutional and does not rest on any other retroactive rule of constitutional law, § 2255 is "inadequate or ineffective" in this case and his petition should be entertained by this Court.

These cases apply to the petition's merits such that it is "more likely than not that no reasonable juror [or trier of fact] would have [enhanced his sentence]". *Hill*, 836 F.3d at 595.

In this case, the District Court erred in determining that Chaffin was a career offender within the meaning of USSG § 4B1.1(a), which provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Chaffin was over 18 years of age when he committed this offense, and it was a controlled substance offense within the meaning of USSG § 4B1.1(a). His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence." The PSR construed USSG § 4B1.2, which defines a "controlled substance offense" and a "crime of violence."

10

William J. Chaffe
AUGUST 3, 2022

Chaffin was sentenced as a career offender because before he was convicted in federal court of the present offense, Chaffin was previously convicted of the following offenses:

(1)   01/11/1995: Possession with Intent to Deliver Cocaine, in the Court of Common Pleas of Allegheny County, Pittsburgh, PA, Docket No. CC9501649; and

(2)   06/17/1995: Possession with Intent to Deliver Cocaine, in the Court of Common Pleas of Allegheny County, Pittsburgh, PA, Docket No. CC9509749.

Here, Chaffin contests that he has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense," explained as follows:

*Controlled Substance Offense*

Section 4B1.2 of the Guidelines defines a "controlled substance offense" as follows:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. USSG § 4B1.2(b).

With regard to the prior conviction used to enhance Chaffin under USSG § 4B1.1, he was charged with Possession with Intent to Deliver Cocaine, in violation of Pennsylvania Crimes Code Title 35 Section 780-113(a)(30).

PA Statute 780-113(a)(30) states:

Except as authorized by this act, the manufacture, delivery, or possession
with intent to manufacture or deliver, a controlled substance by a person
not registered under this act, or a practitioner not registered or licensed by
the appropriate State board, or knowingly creating, delivering or
possessing with intent to deliver, a counterfeit controlled substance.

The question in this case is whether the Pennsylvania statutes under which
Chaffin was convicted are "divisible." *See, e .g ., Descamps v. United States*, 133 S.Ct.
2276, 2281 (2013). A statute is "divisible" when it "sets out one or more elements of
the offense in the alternative—for example, stating that burglary involves entry into a
building *or* an automobile." *Id.*

As the Supreme Court explained in *Descamps*:

"[i]f one alternative (say, a building) matches an element in the generic
offense, but the other (say, an automobile) does not, the modified
categorical approach permits sentencing courts to consult a limited class
of documents, such as indictments and jury instructions, to determine
which alternative formed the basis of the defendant's prior conviction."

*Id.*

In *United States v. Kevin Abbott*, No. 13-2216 (3d Cir. 2014), the Third Circuit
was asked to determine whether Pennsylvania's criminal statute proscribing possession
with intent to distribute a controlled substance, 35 PA. STAT. ANN. § 780-113(a)(30),
is a "divisible" statute under *Descamps v. United States*, 133 S. Ct. 2276 (2013). If it
is divisible, then convictions under that statute are subject to the modified categorical

approach when determining if they are predicate offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("the ACCA"). The Third Circuit held that 35 PA. STAT. ANN. § 780-113(a)(30) is divisible and, accordingly, the trial court's use of the modified categorical approach was proper.

See also, *Singh v. Att'y Gen.*, --- F.3d ---, 2016 U.S. App. LEXIS 18155 (3d Cir. Oct. 6, 2016). This appeal from a Board of Immigration Appeals decision reaffirms that Pennsylvania's Possession with Intent to Deliver statute, 35 P.S. § 780-113(a)(30) is divisible with respect to both the conduct (manufacturing, delivering, etc.) and the controlled substance to which it applies. Therefore, when determining whether a conviction for Section 780-113(a)(30) is an aggravated felony (or whether it serves as a predicate conviction for various federal sentencing enhancements), the modified categorical approach must be applied. Importantly, Pennsylvania law defines controlled substances as including counterfeit substances, while federal law does not. Employing the modified categorical approach and looking to the appropriate *Shepard* documents, Singh's negotiated plea agreement and colloquy stated that his offense involved "PA counterfeit substance – Non Fed." The substance was not specified in any of the *Shepard* documents. Since the documents indicated that the substance involved was banned by Pennsylvania law but not federal, Singh's conviction did not match the elements of the generic federal drug trafficking crime and was not an aggravated felony.

08/02/2022

In *Mathis v. United States*, 136 S.Ct. 2243 (2016), the Supreme Court set forth how a court determines whether a statute is divisible and therefore whether, in employing the modified categorical approach, documents pertaining to the prior conviction may be used to ascertain if that conviction comes within a federal definition of an offense or has the elements of an enumerated offense. The decision in *Mathis* plainly and unmistakably leads to the conclusion that the definition of "possession" in section 481.002(8), as authoritatively interpreted by the Texas Court of Criminal Appeals sets forth various means of committing an offense and does not set forth in the disjunctive separate offenses. See *Lopez v. State*, 108 S.W.3d 293, 299 (Tex. Crim. App. 2003) (citing *Rodriguez v. State*, 89 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd)).

The Supreme Court's decision in *Mathis* dealt with the Armed Career Criminal Act (ACCA), not the federal enhancement sentencing. However, the primary focus of the Court's decision in *Mathis* was how to determine whether a statute is "divisible" and therefore whether the modified categorical approach can be used to determine, when a statute defines more than one offense, of which offense a defendant was convicted. *Id.* The decision in *Mathis* clarified when and how the modified categorical approach is applied in the context of federal sentencing. With exceptions not relevant

14

to this appeal, courts generally used the categorical and modified categorical approaches in applying the federal sentencing Guidelines. See *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 n.4 (2015); see also *Rojas v. Att'y Gen. of the U.S.*, 728 F.3d 203, 215 (3d Cir. 2013) (en banc) (noting the modified categorical approach applies "[w]hen a statute of conviction lists elements in the alternative, some of which fit the federal definition and some of which do not").

In *Mathis*, the Supreme Court set forth how a court determines whether a statute is divisible and therefore whether, in employing the modified categorical approach, documents pertaining to the prior conviction may be used to ascertain if that conviction comes within a federal definition of an offense or has the elements of an enumerated offense. In *Mathis*, an Iowa burglary statute criminalized entry into or onto locations that included a building, a structure, land, water, or an air vehicle. *Id.* at 2250. Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary. *Id.* at 2256. The sentencing court considered documents pertaining to *Mathis'* prior convictions, which reflected that he had burgled structures not vehicles, and the district court concluded that the sentencing enhancement under the ACCA applied. *Id.* at 2250. The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible,

and we must apply the modified categorical approach." *Mathis*, 786 F.3d 1068, 1075 (8ᵗʰ Cir. 2015). The Supreme Court reversed the Eighth Circuit because the Iowa Supreme Court had held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved." *Mathis*, 136 S. Ct. at 2250 (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981).

The *Mathis* decision instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element. Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense. See *Jean Junior Jeune v. Attorney General of the United States*, 476 F.3d 199 (3ʳᵈ Cir. 2007).

*Garcia v. Attorney General of the United States*, 462 F.3d 287 (3d Cir. 2006), held that a violation of 35 PA. Cons. Stat. Ann. § 780-113(a)(30) is not categorically an aggravated felony.

In light of *Mathis*, it must be determined whether "listed items" in a state statute "are elements or means," and if "a state court decision definitively answers the question" the inquiry is at an end. See *Mathis*, 136 S. Ct. at 2256. The Iowa statute was

clear in *Mathis*. As the Supreme Court held in *Mathis*, "[w]hen a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.* at 2256. It is therefore not necessary to utilize the other means set forth in *Mathis* for discerning whether alternatives listed in a statute are elements or means. *Id.*

If the elements of the defendant's crime of conviction criminalizes a "greater swath of conduct than the elements of the relevant [Guidelines] offense" [*Mathis*, 136 S. Ct. at 2251] . . . [T]his "mismatch of elements" means that his conviction for the knowing possession with intent to deliver is not a controlled substance offense under the Guidelines. *Id.* That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1. *Id.*

Under the modified categorical approach, "a court may determine which particular offense the defendant was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea." *Moncrieffe*, 133 S. Ct. at 1684 (internal quotation marks omitted); see also *Shepard v. United States*, 544 U.S. 13, 16 (2005) ("generally limit[ing]" a court "to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). But "[o]ff limits to the adjudicator . . . is any inquiry into the particular facts of the case."

17

*Mellouli*, 135 S. Ct. at 1986 n.4.

Chaffin's prior 35 PA. Cons. Stat. Ann. § 780-113(a)(30) convictions no longer qualify as a § 4B1.1 predicate under the proper application of the "modified categorical approach," as clarified in *Descamps*. The basics are as follows: Courts apply the "categorical approach" to determine whether a defendant was convicted of an offense with the requisite elements to qualify as a predicate "controlled substance offense" under § 4B1.1. See *Descamps*, 133 S. Ct. at 2281-82. Under this "elements-based" approach, the prior conviction must be for an offense having the same (or narrower) elements as the applicable definition of the qualifying offense. *Id*. at 2285-86. If, by its elements, the statute of conviction sets forth a single, "indivisible" crime that applies more broadly than the qualifying offense (i.e., it applies to an offense that is not criminalized under the definition of the qualifying offense), the prior conviction cannot be a predicate. See *id*. at 2285-86, 2293. If the statute of conviction is "divisible" into alternative elements, some of which constitute a predicate and some of which do not, the court is permitted to look beyond the judgment to a limited set of case-specific documentation—i.e., the charging document and jury instructions or bench trial findings of the court if the defendant was convicted at trial, *Taylor v. United States*, 495 U. S. 575, 602 (1990), and the plea agreement and plea colloquy transcript (or "some comparable judicial record of this information") if the defendant pled guilty, *Shepard*

18

*v. United States*, 544 U. S. 13, 25-26 (2005)—to determine the elements of the offense

of which the defendant was convicted, *Descamps*, 133 S. Ct. at 2283-84. If the

elements of the offense of conviction cannot be determined from these documents

without regard to the underlying facts, it must be assumed that the conviction was for

the least culpable crime, i.e., the non-qualifying offense, see *Johnson v. United States*,

559 U.S. 133, 137 (2010), and thus the prior conviction under that statute cannot

qualify as a predicate offense. This is called the "modified categorical approach," and

is intended only as a "tool for implementing the categorical approach." *Descamps*, 133

S. Ct. at 2284.

The Supreme Court first adopted the categorical approach in *Taylor v. United*

*States*, 495 U.S. 575 (1990). As it recently reiterated, it adopted this approach—rather

than a factual approach that would authorize federal sentencing courts to try to discern

from a previous trial or plea record facts superfluous to the prior conviction and to find

that the defendant was in fact guilty of an offense of which he was not convicted—for

three reasons: (1) the categorical approach comports with the text and history of the

Armed Career Criminal Act at 18 U.S.C. § 924(e), which requires a mandatory 15-year

minimum when the defendant has three prior convictions for a "violent felony" or

"serious drug offense"; (2) a factual approach would present practical difficulties and

unfairness; and (3) it would violate the Sixth Amendment for the federal court to make

findings of fact that belong to a jury. See *Descamps*, 133 S. Ct. at 2287-89.

Courts of appeals have not always been disciplined in using the modified categorical approach in that limited manner, however, expanding its use to apply to statutes that do not have alternative elements and permitting federal district courts to determine on an unreliable paper record that the defendant in fact committed the generic offense. In *Descamps*, decided in 2013, the Supreme Court clamped down on these loose practices. It clarified that courts may use the modified categorical approach only for "divisible" statutes, under which the "statute sets out one or more elements of the offense in the alternative," not all of which qualify as a predicate. *Id.* at 2281-82. It further clarified that the court may use this modified approach "only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Id.* at 2293 (emphasis added). "The modified approach does not authorize a sentencing court to substitute . . . a facts-based inquiry for an elements-based one. A court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Id.* In other words, as with the categorical approach, the modified approach may be used only to identify the elements of the crime of which the defendant was convicted, not to identify and rely on facts superfluous to the prior conviction.

The definition "possession" means actual care, custody, control, or management.

Therefore, possession can be actual care, custody, control or management of a controlled substance which are separate and distinct offenses from possession of a controlled substance. The various definitions of "possession" are not elements of separate offenses but are various means of committing the offense of possession of a controlled substance.

Same with the definition of "deliver" in section 481.002(8) in conjunction with section 481.112(a) sets forth different offenses, such that delivering a controlled substance by "offering to sell" it is a separate and distinct offense from delivering a controlled substance by "transfer[ing], actually ..., to another a controlled substance." Hinkle contends that the various definitions of "deliver" in section 481.002(8) of the Texas statute are not elements of separate offenses but are various means of committing the offense of "deliver[ing] ... a controlled substance." The Government contends that the Texas indictment can be used to "narrow" the offense of which Hinkle was convicted to the offense of "deliver[ing] ... a controlled substance" by "transfer[ing] [it] actually ... to another." Both rely on *Descamps* in support of their respective positions. See *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016).

The decision in *Mathis* instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element. See *Mathis*, 136 S.Ct. at 2250. Elements must be agreed upon by a jury. *Id.* at 2256. When a jury

21

is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense. *Id.* At issue in *Mathis* was an Iowa burglary statute that proscribed entry into or onto locations that included a building, a structure, land, water or an air vehicle. *Id .* at 2250; *see also,* Iowa Code§§ 702.12, 713.1. Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary. *Mathis,* 136 S.Ct. at 2250. The sentencing court looked to the documents pertaining to Mathis' prior convictions, which revealed that Mathis had burgled structures not vehicles, and the district court concluded that the sentencing enhancement under the ACCA applied. The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach." The Supreme Court disagreed and reversed the Eighth Circuit because the Iowa Supreme Court has held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved." *Mathis ,* 136 S.Ct. at 2250 (quoting *State v. Duncan,* 312 N.W.2d 519, 523 (Iowa 1981)).

Here, same decision should apply to Chaffin as his 35 PA. Cons. Stat. Ann. §

22

780-113(a)(30) convictions do not qualify as a "controlled substance offenses" within the definition of § 4B1.2, therefore, with no qualified "controlled substance offense," Chaffin could not be qualified as a Career Offender under the § 4B1.1 guidelines.

Without the career offender enhancement, Chaffin's Adjusted Offense Level would have been 32, less three (3) levels for acceptance of responsibility, will result in a Total Offense Level of 29 and a Criminal History Category of IV. Based upon a Total Offense Level of 29 and a Criminal History Category of IV, the correct guideline imprisonment range is 121 to 151 months.

Finally, Chaffin asserts that the increase in the calculation of his sentencing range based on the career offender enhancement, may have resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Chaffin's sentence should be vacated for resentencing without the career offender enhancement. In the alternative, an evidentiary hearing should be held so that Chaffin may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: August 3, 2022

WILLIAM J. CHAFFIN, JR.
REG. NO. 36750-068
FCI ALLENWOOD MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 2000
WHITE DEER, PA  17887
Appearing *Pro Se*